UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| JAMES R., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:23-cv-00081 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff James R.[1] filed this action for judicial review[2] of the Commissioner of the Social Security Administration's decision denying his application for disability insurance benefits beginning March 2020 under Title II[3] of the Social Security Act. The Administrative Law Judge ("ALJ") issued a partially favorable decision, finding Mr. R. became disabled on December 15, 2021.[4] Mr. R. challenges the unfavorable portion of the decision, arguing the ALJ erred in his supportability and consistency analysis of two medical opinions, such that the court is unable to meaningfully review the decision.[5] The court[6] has carefully reviewed the record and the parties'

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including social security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Compl., Doc. No. 2; Opening Br., Doc. No. 14.)

[3] 42 U.S.C. §§ 401–434.

[4] (Certified Tr. of Admin. R. ("Tr.") 15–28, Doc. No. 10.)

[5] (Opening Br. 12, Doc. No. 14.)

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 9.)

1

briefs.[7] Because the ALJ did not legally err in his supportability and consistency analysis, and his decision is supported by substantial evidence, the Commissioner's determination is affirmed.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the whole record to determine whether substantial evidence supports the ALJ's factual findings and the ALJ applied the correct legal standards.[8] "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[9]

"[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence."[10] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative

---

[7] The appeal is determined on the written memoranda, as oral argument is unnecessary. *See* DUCivR 7-1(g).

[8] 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[9] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted).

[11] *Id.* at 1154 (internal quotation marks omitted).

[12] *Id.* (internal quotation marks omitted).

agency's findings from being supported by substantial evidence."[13] The court may not substitute its judgment for that of the ALJ nor may it reweigh the evidence.[14]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[15] An individual is considered disabled only if her impairments are so severe, she cannot perform her past work or "any other kind of substantial gainful work."[16]

In assessing disability, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) she has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) she has the residual functional capacity to perform past relevant work; and

5) she has the residual functional capacity to perform other work, considering her age, education, and work experience.[17]

---

[13] *Lax*, 489 F.3d at 1084 (internal quotation marks omitted).

[14] *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[15] 42 U.S.C. § 423(d)(1)(A).

[16] *Id.* § 423(d)(2)(A).

[17] *See* 20 C.F.R. § 404.1520(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

The claimant has the burden, in the first four steps, of establishing disability.[18] At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[19]

## PROCEDURAL HISTORY

In March 2021, Mr. R. applied for disability insurance benefits.[20] He alleged disability beginning March 2020.[21] After an administrative hearing,[22] the ALJ issued a decision on July 27, 2022, finding Mr. R. disabled as of December 15, 2021 (due to the impact of a change in age category)—but not disabled before that date.[23] At step two of the sequential evaluation, the ALJ found Mr. R. had the severe impairments of degenerative disc disease of the lumbar and cervical spine.[24] At step three, the ALJ found these impairments did not meet or medically equal an impairment listing.[25]

The ALJ found Mr. R. had the residual functional capacity ("RFC")[26] to perform light work, with additional exertional and functional limitations, including a limitation that he only be

---

[18] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[19] *Id.*

[20] (*See* Tr. 223.)

[21] (*Id.*)

[22] (*See* Tr. 53–84.)

[23] (Tr. 19–28.)

[24] (Tr. 21–22.)

[25] (Tr. 22.)

[26] A claimant's RFC is the most she can do in a work setting considering her limitations. *See* 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1 (July 2, 1996). In assessing RFC, the ALJ considers all medically determinable impairments and all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1545(a)(2)–(3).

4

on his feet for four hours out of eight; frequently balance, reach, and handle; and occasionally climb, stop, kneel, crouch, or crawl.[27] Based on this RFC, the ALJ found Mr. R. unable to perform his past relevant work.[28] But after considering the testimony of a vocational expert, the ALJ found Mr. R. capable of performing other jobs existing in significant numbers in the national economy up until December 15, 2021, when his age category changed.[29] Ultimately, the ALJ found Mr. R. not disabled before December 15, 2021, denying his claims before that date and granting his claims after that date.[30]

The Appeals Council denied Mr. R.'s request for review,[31] making the ALJ's decision final for purposes of judicial review.

## DISCUSSION

Mr. R. raises one claim of error. He argues the ALJ erred in his supportability and consistency analysis of two medical opinions, leaving the court unable to meaningfully review the decision.[32] Specifically, he challenges the ALJ's analysis of the medical opinions of Allen Gillet, D.C., and Anne Roberts, FNP.[33] He also generally argues the ALJ made inconsistent findings, improperly "playing doctor."[34] In response, the Commissioner argues the ALJ properly

---

[27] (*See* Tr. 21–22.)

[28] (Tr. 26.)

[29] (Tr. 27–28.)

[30] (Tr. 28.)

[31] (Tr. 1–4.)

[32] (*See* Opening Br. 12, Doc. No. 14.)

[33] (*Id.* at 12–19.)

[34] (*Id.* at 20.)

considered all the medical opinions, including those of Dr. Gillet, Ms. Roberts, and the state agency consultants.[35] According to the Commissioner, Mr. R. is essentially asking the court to reweigh the evidence, which is disallowed.[36]

An ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings based on the following factors: (1) supportability (the extent to which the opinion is supported by underlying medical evidence and explanations); (2) the consistency of the opinion with other sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and (5) any other relevant factors.[37] The most important factors are supportability and consistency, and the ALJ is required to explain how she evaluated those two factors.[38] In this case, the ALJ properly considered the medical opinions of Dr. Gillet and Ms. Roberts pursuant to these factors, and substantial evidence supports his findings.

<u>Dr. Allen Gillet's Opinion</u>[39]

Mr. R. first argues the ALJ erred in his analysis of Dr. Gillet's opinion but, as explained below, the ALJ's analysis was proper and is supported by the record.

---

[35] (Answer Br. 12–20, Doc. No. 20.)

[36] (*Id.* at 20.)

[37] 20 C.F.R. § 404.1520c(b), (c)(1)–(5).

[38] *Id.* § 404.1520c(b)(2).

[39] It is not entirely clear who submitted the medical opinion at issue, as the signature is not fully legible and the practitioner's name does not appear elsewhere in the report. (*See* Tr. 367.) The ALJ noted the opinion was from Dr. Allen Gillet. (*See* Tr. 25.) Where Mr. R. also refers to the provider as Dr. Allen Gillet, (*see* Opening Br. 14, Doc. No. 14), the court follows suit.

Dr. Gillet filled out a form containing opinions as to Mr. R.'s functional abilities.[40] Among other things, he opined Mr. R. could only occasionally lift or carry up to ten pounds, climb ladders, kneel, crouch, or crawl—and could sit, stand, and walk for three hours at a time, for a total of five hours each in an eight-hour day.[41] The ALJ found this opinion to be somewhat unpersuasive:

> The undersigned finds this opinion to be unpersuasive to the extent it is inconsistent with the residual functional capacity above, as it is not supported by any accompanying explanation, nor with any objective physical examination or diagnostic findings. In addition, the opinion is inconsistent with the record as a whole, including that the claimant continued doing landscaping occasionally when the opinion was written.[42]

Although the ALJ's analysis of Dr. Gillet's opinion was brief, it was sufficient in light of the nature of the report. Dr. Gillet's report consisted solely of a checkbox form—with no narrative or analysis or explanation of any sort.[43] It is impossible to tell what the opinion is based on; there is no indication Dr. Gillet physically examined Mr. R. or reviewed his medical records. Indeed, the form contains nothing in each of the eight places where the medical provider is directed to identify medical or clinical findings supporting the assessment.[44] The lack of findings is notable considering the explicit directions to the medical provider at the top of the form: "It is important that you relate particular medical or clinical findings to any assessed limitations in capacity; [t]he usefulness of your assessment depends on the extent to which you

---

[40] (Tr. 366–70.)

[41] (*Id.*)

[42] (Tr. 25–26.)

[43] (Tr. 366–70.)

[44] (*See id.*)

do this."[45]  Indeed, it is difficult to conceptualize what an ALJ should do with a form like this. With so little information, Dr. Gillet's report is simply unhelpful.

Despite this, the ALJ applied the correct legal standards to Dr. Gillet's opinion.  He considered supportability, noting the report was not supported by any explanation, nor by a physical examination or diagnostic findings.  This is true.  The report consists of an opinion as to specific limitations and restrictions in a vacuum.  Mr. R. argues that where the provider's signature is illegible, it is not apparent "the ALJ actually conducted a supportability analysis against the physician's own records."[46]  But the administrative record does not appear to contain any other records from that provider—no similar name or signature is present.  And Mr. R. fails to support his suggestion that the ALJ may have missed something with any citation to records by the same provider.  Accordingly, this argument falls flat.  The ALJ did not err in his supportability analysis of a check-box form with no explanations, containing opinions of no known basis.

Mr. R. also takes issue with ALJ's consistency analysis, complaining that the ALJ's observation that Mr. R. was occasionally landscaping at the time of Dr. Gillet's opinion, is insufficient.[47]  But the ALJ legitimately considered Mr. R.'s participation in landscaping. Landscaping is necessarily a physical job.  It is fair for the ALJ to consider it when assessing the consistency of Dr. Gillet's opinion with the record as a whole.  And the ALJ did not need to

---

[45] (Tr. 366.)

[46] (Opening Br. 17, Doc. No. 14.)

[47] (*Id.* at 17–18.)

recite again every piece of evidence in analyzing each provider's opinion.[48]  In his decision, the ALJ thoroughly recited Mr. R.'s medical and treatment history, including that:

- Mr. was doing well overall in January 2021, after spinal surgery;[49]

- records from March 2021 showed Mr. R.'s right arm pain had improved;[50]

- Mr. R. was doing well in June 2021 despite his pain—and a musculoskeletal exam showed results within normal limits; and[51]

- records from July 2021 showed Mr. R. moved without difficulty, had a normal gait,[52] and had an active job.[53]

Dr. Gillet's opinion was dated March 12, 2021,[54] during this same timeframe.  In other words, even though the ALJ did not recite this same evidence again when assessing the consistency of Dr. Gillet's opinion, he did consider and recite evidence showing Dr. Gillet's unsupported opinion was inconsistent with the record.  Overall, the ALJ did not err in his consistency analysis of Dr. Gillet's opinion.

---

[48] *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [an] opinion.").

[49] (Tr. 24 (citing Tr. 1290).)

[50] (*Id.* (citing Tr. 1286).)

[51] (*Id.* (citing Tr. 413–15).)

[52] (*Id.* (citing Tr. 1236).)

[53] (*Id.* (citing Tr. 1525–26).)

[54] (Tr. 367.)

Mr. R. relies on *R.J.P.A. v. Kijakazi*[55] in support of the idea that harmless error does not justify an ALJ's failure to follow the applicable regulations—such as failing to properly assess supportability and consistency.[56] But *R.J.P.A.* does not help Mr. R. First and foremost, in this case, the ALJ followed the applicable regulations, unlike in *R.J.P.A.* In *R.J.P.A.*, the court found the ALJ applied the wrong regulations to begin with—discounting a medical source opinion based on standards which had been rescinded.[57] The court found the ALJ also relied on minimal evidence to support the RFP while overlooking probative evidence to the contrary, which is not the case here.[58] Finally, the court noted the Commissioner failed to address any of those issues—instead arguing the provider's opinion was unpersuasive on grounds the ALJ did not even consider.[59] Mr. R. has not shown any of these circumstances apply here.

Finally, Mr. R. contends the ALJ erroneously rejected Dr. Gillet's opinion due to its inconsistency with the RFC.[60] According to Mr. R., this shows the ALJ improperly "put the cart before the horse," crafting an RFC then rejecting evidence inconsistent with it after it was crafted.[61] This argument assigns far too much significance to the ALJ's finding that the opinion was "unpersuasive to the extent it is inconsistent with the residual functional capacity."[62]

---

[55] No. 21-cv-2009, 2022 U.S. Dist. LEXIS 168041 (D. Colo. Sept. 16, 2022) (unpublished).

[56] (Opening Br. 15, Doc. No. 14.)

[57] 2022 U.S. Dist. LEXIS 168041, at *14.

[58] *See id.* at *14–15.

[59] *Id.* at *18.

[60] (Opening Br. 16, Doc. No. 14.)

[61] (*Id.*)

[62] (Tr. 25.)

Instead of reflecting that the ALJ first determined the RFC without considering the record then rejected contrary evidence, it reflects the reality that decisions are written after they are made. In other words, at the time the ALJ drafted the written order, he had already reviewed the evidence, concluded Dr. Gillet's opinion was unsupported and inconsistent, and determined Mr. R.'s RFC. The ALJ's reference to the RFC in this context is shorthand for this inconsistency and unsupportability. It is not an indication that the ALJ determined the persuasiveness of the opinion before reviewing the evidence. Overall, the ALJ properly considered (and legitimately found unpersuasive) the unsupported, checkbox opinion of Dr. Gillet in light of the record evidence.

      Anne Roberts' Opinion

Mr. R. also argues the ALJ failed to properly consider the opinion of a nurse practitioner, Anne Roberts.[63] According to the administrative record, Ms. Roberts treated Mr. R. from 2019 through mid-2020.[64] Much later, in April 2022, Ms. Roberts completed a checkbox form noting limitations in Mr. R.'s ability to work.[65] Among other things, Ms. Roberts opined Mr. R. could lift and carry up to ten pounds frequently and twenty pounds occasionally; stand or walk up to two hours at a time, for a total of four hours in an eight-hour day; occasionally stoop, kneel, and crouch; and never climb ladders or scaffolds, or crawl.[66] The sum total explanation she gave for

---

[63] (Opening Br. 18–19, Doc. No. 14.)

[64] (*See* Tr. 474–500, 502–91.)

[65] (*See* Tr. 1556–60.)

[66] (*Id.*)

her opinion was: "Patient can only work 2-3 hours per day due to pain—has 2 severely herniated discs in lumbar spine and 2 in cervical spine."[67]

Mr. R. generally contends the ALJ erred in his supportability and consistency analysis of Ms. Roberts' opinion.[68] However, Mr. R. only specifically addresses the ALJ's consistency analysis.[69] He argues the ALJ again improperly relied on Mr. R.'s activities, including his work and ability to lift a fifty-pound bag of fertilizer.[70] And he asserts that although the ALJ relied on records showing Mr. R. had good muscle tone and bulk, most of the records resulted from telehealth visits with no physical examination.[71] Finally, Mr. R. argues the ALJ erroneously failed to assess the consistency of Ms. Roberts' opinion with Dr. Gillet's—and claims the opinions jointly support a finding that Mr. R. could not work during the relevant period.[72]

The ALJ properly considered Ms. Roberts' opinion, including its supportability and consistency with the overall record. The ALJ found Ms. Roberts' opinion unpersuasive because:

> it is not supported by Ms. Roberts' treatment notes, including the claimant's reports that he was active now that his migraines were gone, as well as with her essentially normal examination findings. Moreover, the opinion is inconsistent with the record as a whole, including with reports that the claimant was working, although on occasion, including that he was lifting a 50-pound bag of fertilizer and that he reported that he did manual work where he often would hold a chainsaw while trimming trees. In addition, the opinion is inconsistent with findings of record

---

[67] (Tr. 1560.)

[68] (*See generally* Opening Br. 12–13, Doc. No. 14.)

[69] (*Id.* at 19.)

[70] (*Id.*)

[71] (*Id.*)

[72] (*Id.*)

12

including that the claimant ambulated and moved without difficulty, and his gait was normal. In addition, there was good muscle tone and bulk throughout.[73]

These findings are well-founded.

First, with regard to supportability, Ms. Roberts' clinical notes do not support her conclusions as to Mr. R.'s functional limitations. Although Ms. Roberts' saw Mr. R. a number of times, many of her notes appear to be copied over from previous reports. Ms. Roberts' specific notes were limited, and generally lacked indication of debilitating symptoms.[74] Consistent with the ALJ's findings, Mr. R. denied having headaches in February 2020, and indicated he was doing well and using an over-the-counter medication for joint pain.[75] He was ambulatory, with no deficits on examination.[76] Later visits at the same clinic showed Mr. R. reported no headaches since July 2019.[77] In addition, in July 2020, Mr. R. noted he was generally healthy, and was "very active on the landscape/property management business" and had "no other health concerns or problems."[78] In light of the record, and the relative lack of explanation or findings in Ms. Roberts' own opinion report, the ALJ's conclusions regarding the supportability of Ms. Roberts' opinions were well-founded.

The same holds true with regard to the ALJ's analysis of the consistency of Ms. Roberts' opinion. The ALJ's consistency analysis is not undermined by the telehealth records containing

---

[73] (Tr. 26.)

[74] (*See generally* Tr. 576–91.)

[75] (*See* Tr. 577.)

[76] (Tr. 578.)

[77] (Tr. 593, 602.)

[78] (Tr. 593.)

findings that Mr. R. had normal muscle bulk and tone—because a number of in-person examinations showed the same, and that he could ambulate without difficulty.[79] The ALJ appropriately considered Mr. R.'s admitted ability to do physical work and his ability to ambulate and move without difficulty. The ALJ is correct that this record evidence undermines Ms. Roberts' opinion. And Mr. R.'s argument that the ALJ erred by failing to consider the consistency of Ms. Roberts' opinion with Dr. Gillet's misses the mark. The ALJ considered the consistency of Ms. Roberts' opinion with the record as a whole. Where the ALJ legitimately found Dr. Gillet's opinion to be unsupported and inconsistent with the record, he did not err by failing to explicitly juxtapose the two opinions. Overall, the ALJ sufficiently and properly considered the supportability and consistency factors when assessing Ms. Roberts' opinion.

"Playing Doctor"

Finally, Mr. R. argues the ALJ's decision reveals no traceable path from the record to his rejection of Dr. Gillet's and Ms. Roberts' opinions.[80] According to Mr. R., by failing to reconcile Dr. Gillet's and Ms. Roberts' opinions—while failing to fully accept or reject the state agency medical consultants' opinions—the ALJ erroneously substituted his opinion for that of qualified medical experts.[81] The Commissioner responds by arguing the ALJ properly assessed the consultants' opinions and found Mr. R. more limited than they suggested because the consultants' opinions were not entirely consistent with the record.[82]

---

[79] (*See, e.g.*, Tr. 328, 335, 739, 1204, 1400, 1454.)

[80] (Opening Br. 19, Doc. No. 14.)

[81] (*Id.* at 20.)

[82] (Answer Br. 19, Doc. No. 20.)

There is no indication the ALJ improperly "played doctor" or substituted his opinion for those of qualified medical experts. Just as the ALJ need not find Dr. Gillet's or Ms. Roberts' opinions fully persuasive, he need not find the consultants' opinions fully persuasive. He did not err by using these opinions, as he did, to determine Mr. R.'s RFC.[83] The ALJ assessed the record evidence and the opinions of the medical providers and experts using the correct legal framework. Necessarily, this sort of assessment involves the resolution of evidentiary conflicts, which falls fully within the ALJ's purview[84]—so long as his conclusions are supported by more than a mere scintilla of evidence.[85] In this case, the ALJ's conclusions are well-supported. He fully and carefully considered the record evidence and properly reviewed the medical opinions in accordance with governing legal standards. Mr. R.'s argument merely invites reweighing of the evidence, which the court cannot do.[86]

## CONCLUSION

Mr. R. has demonstrated no error in the ALJ's evaluation of any of the medical opinions. Because the ALJ applied the correct legal framework, he explained how he considered

---

[83] *See* 20 C.F.R. § 404.1546(c); *see also Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

[84] *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016) ("The ALJ was entitled to resolve such evidentiary conflicts and did so.").

[85] *See Biestek*, 139 S. Ct. at 1154.

[86] *See Langley*, 373 F.3d at 1118.

supportability and consistency, and his assessment was supported by substantial evidence, he did not err in his evaluation. Accordingly, the Commissioner's decision is AFFIRMED.

DATED this 9th day of January, 2024.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge